FILED
MAY 16 2024
CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
DEPUTY CLERK

Joel Br. Jacobs, Kathleen Chambers
2187 Mt. Errigal Ln
Lincoln, CA, 95648
+1 (916) 298 4215
Fax Number: N/A
Email: katiewynne777@gmail.com, jj1276@princeton.edu,
jbj45@georgetown.edu,

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF CALIFORNIA

JOEL BRENDON JACOBS, ET AL.

Plaintiff(s),

vs.

TRUSTEES OF PRINCETON UNIVERSITY, ET AL.

Defendant(s).

Case No.: ~~S-CV-0052396~~; 2:24-cv-01143

**FIRST AMENDED PLEADING FOR (1) A VIOLATION OF CIVIL RIGHTS, (2) HARASSMENT, (3) RETALIATION (4) STALKING, (5) DEFAMATION, (6) TRESPASS, (7) CIVIL THEFT, (8) FRAUD, (9) BREACH OF CONTRACT, (10) COMMERCIAL BRIBERY, (11) ANTICOMPETITION, (12) WILLFUL MISCONDUCT, (13) CONSTRUCTIVE DISCHARGE, (14) INTENTIONAL & NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS,**

DATE:
DEPT:

"Code of Civil Procedure section 472 provides in relevant part: 'Any pleading may be amended once by the party of course, and without costs, at any time before the answer or demurrer is filed . . .'" *Merritt v. Mozilo*, H037414 (Cal. App. 2013). A party may amend its pleading once as a matter of course no later than 21 days after serving it. F.R.C.P 15(a)(1)(a). No defendants have been served a complaint and summons here. Plaintiffs, Joel Br. Jacobs and Kathleen Chambers, file this First Amended Pleading and allege as follows:

### General Pleading

1. Plaintiffs allege the following against the defendants; Trustees of Princeton University, Princeton University Investment Co., Christopher L. Eisgruber, Philip Murphy, Louise S. Sams,

- 1 -
FIRST AMENDED PLEADING

1  Philip U. Hammarskjold, Lori D. Fouché, Hilary A. Parker, Kamil Ali-Jackson, José B. Alvarez,
2  Jackson Artis, Joshua B. Bolten, Pete Briger, Beth F. Cobert, Marisa J. Demeo, Janeria A. Easley,
3  Blair Effron, Henri R. Ford, Heather K. Gerken, Yolandra Gomez, Naomi Hess, Robert J. Hugin,
4  Yan Huo, Kimberly H. Johnson, Kathy F. Kiely, Timothy M. Kingtson, Anthony H.P Lee, Nandi O.
5  Leslie, Paul Maeder, Mutemwa R. Masheke, Elizabeth Prus Myers, Carol Quillen, Gordon P. Ritter,
6  Kathryn Roth Douquet, Bradford L. Smith, Morgan A. Smith, Sarah E. Stein, Carla B. Vernón,
7  Melissa H. Wu, Jackie Y. Ying, Randy K. Hubert, Cheri Burgess, Mitchell C. Bailin, Gary Peller,
8  Amaney Jamal, Rodney D. Priestley, Mariaeugenia Gurdian, Amber Freeney, Karen McGuinness,
9  Hilary Herbold, Martha B. Coven, Caroline Fredrickson, Melissa Stewart, Connor Kolet, Stephanie
10 Houghton, Cameron Koob, David Groom, Brad Pulcipher, Lily B. Secora, Kyle Casey, Andrea
11 Hutson, Andrew Nisco, Thomas Caruso, Mikayla Nadine, Kristen Anderson, Michael Boozer,
12 Morgan Lonergan, Ana Cecilia Fieler, Maisha Rounds, Kinamo Lomon, William M. Treanor, Mack
13 Kenner, Frances Steele, Anna Schaeffer, Daisha Roberts, Michael Chapman, Rooya Rahin,
14 Ferdinand Quayson, Svyatoslav Karnasevych, Joshua Heupel, Luis Francisco Gonzalez Ortega,
15 Amana Abdurrezak, Madeline Davet, Ariel Edelman, Laurel Cooke, Nicholas Brown, Aogay
16 Alozai Wardak, Jennifer Williams, Mustafa Ali-Smith, Patrick W. Farrell, David S. Lee, Amber
17 Serrano, Kenneth Strother Jr., Geoffrey B. Hill, Calvin Chin, Asha Nambiar, Steven F. Petric,
18 Michelle Minter, and DOES 1 through 9. [CCP 474; *Austin v. Mass. Bonding & Ins. Co.* (1961) 56
19 Cal.2d 596].

20  2. This civil action is brought by plaintiffs pursuant to California Fair Employment and
21 Housing Act of 1959 and as amended by California legis. AB 3364; California Penal Code § 51.7,
22 § 52.1, § 148.3, § 236, § 240, §422.6, § 496(c), § 602, § 641.3, § 646.9, § 653x, § 653.2; Cal. Civ.
23 Code § 527.6(b)(3), §1708.7, § 1708.8, § 1714; California Labor Code sec. 98.6, 230(a-f), 232.5,
24 4553, 1102.5, 1197.5 and as amended by California legis. SB 497; Unfair Competition Law of Cal.
25 Bus. & Prof. Code § 17200 *et seq.*; California Constitution art. I, sec. 1-7, 13; This civil action
26 additionally asserts causes of action under common law doctrines of Intentional and Negligent
27 Infliction of Emotional Distress, Breach of Implied Covenant of Good Faith and Fair Dealings,
28 Tortious Interference, and False Imprisonment. State penal statutes N.J.S.A 2C:12-10, 2C:16-1, and

2C:33-3; D.C. Human Rights Act, and D.C. Code § 22-3133, §22-3704, and § 32-1311 would be argued within this civil action on choice of law.

4. Prayer for relief: Damages sought by plaintiffs in this civil action include compensatory relief totaling $705,949,914 as well as exemplary, nonmonetary, and injunctive relief.

5. Placer County Superior Court has jurisdiction to hear this civil action. Plaintiffs are citizens and residents of California. Plaintiffs are resident of Placer county continuously for more than two decades. Defendants including Mariaeugenia Gurdin, Mikayla Nadine, Brad Pulcipher, David Groom, Kristen Anderson, Joshua Heupel, Pete Briger, Sarah E. Stein, and Gordon P. Ritter are residents and citizens of California. Numerous causes of action at issue occurred in and were expressly directed at the forum state including commercial bribery, fraud, defamation, harassment, stalking, discrimination, retaliation, willful misconduct, and intentional or negligent infliction of emotional distress. Employment at issue did take place in Placer county, and multiple defendants do business in California including Princeton University Investment Co. and Trustees of Princeton University.

6. Contained below are elements for some and factual supporting of each cause of action stated by plaintiffs in this civil action:

    i. FAIR EMPLOYMENT AND HOUSING ACT 2521A. Work Environment Harassment—Conduct Directed at Plaintiff—Essential Factual Elements—Employer or Entity Defendant (Gov. Code, §§ 12923, 12940(j))) —

1. Joel Br. Jacobs (Plaintiff 1) was under employment contract and providing services with Georgetown University and Princeton University.
2. Plaintiff 1 was subjected to severe, continuous harassing conduct due to protected classes of reporting abuse, religion, creed, military or veteran status, gender identity or expression, disability, ancestry or race or color, genetic information, sex, sexual orientation, marital status, and medical condition.
3. The harassing conduct was so severe and pervasive Plaintiff 1 was the first student in Georgetown University Law Center history granted in-semester leave for personal safety and privacy, and shortly after arriving to Princeton University was hospitalized mere hours following one instance of harassing conduct.
4. Numerous within Georgetown University and Princeton University did not understand how Plaintiff 1 withstood all that occurred, regularly commenting Plaintiff 1 must desire punishment for remaining.
5. Plaintiff 1's family found Plaintiff 1's manner transformed, "jumpy", and "unrecognizable". Plaintiff 1 in youth was involved with Child Protective

- 3 -
FIRST AMENDED PLEADING

      Services and has since served Active Duty within the U.S. Marine Corps in Quantico, VA yet found work environments at issue to be far more intimidating and psychologically harmful.

6. Defendants Karen McGuinness, Mitchell C. Bailin, inter alia named defendants are supervisors who engaged in, directed, and furthered the conduct in question motivated by bias.
7. Rather than being in class, Plaintiff 1 is constructively denied access and not attending either university presently, is presently living essentially out of an automobile, is presently unemployed and forced to miss credit card and other payments due, has been humiliated and sabotaged and distressed, had their career in military and government ruined, has been denied graduate degrees and access to academic and other university programs, and was recently diagnosed for Post-traumatic Stress Disorder.
8. Plaintiff 1's harms were intended, planned, and caused by defendants.

  ii. HATE CRIMES 1350. Hate Crime: Misdemeanor Interference with Civil Rights by Force (Pen. Code, § 422.6(a)) —

1. Defendants used force to willfully interfere with, injure, intimidate, and oppress Plaintiff 1 and Plaintiff 1's right to privacy, to be free from violence or bodily harm, to free expression, and freedom to worship as chooses. Defendants placed Plaintiff 1 under constant surveillance including through university police department personnel physically ordered to follow Plaintiff each day as well as devices including Plaintiff 1's cellular phone, laptop, an access point installed within Plaintiff 1's bedroom and residence, targeted software, and devices placed within public restrooms all capturing audio/visual. Defendants utilized above to torment, smear, and as basis for advocating for Plaintiff 1's social isolation and expulsion. Campus police forcibly removed from Plaintiff 1's body a religious artefact, refusing to return it.
2. Defendants did so in whole or part because of Plaintiff 1's actual or perceived gender identity or expression, ancestry or race or ethnicity, sex, sexual orientation, religion, creed, military or veteran status, disability, medical condition, and reporting abuse; AND
3. This interference with Plaintiff 1's legally protected right was intended. Defendants, in whole or part, were biased against Plaintiff based on actual or perceived protected classes AND this bias motivation caused defendants to act here.

  iii. No. 3320. Unfair Competition Act- Secret Rebates- Essential Factual Elements—

1. Defendants Princeton University and Georgetown University secretly received payments and gave unearned discounts to many students and applicants services or privileges that were not given to others under like terms and conditions.
2. Plaintiff 1, and many tens of thousands of applicants and students, were harmed to date.
3. These payments were for admittance into the universities, often totaled six-to-seven figures, and destroyed competition among applicants for admittance. As well, such students admitted and enrolled through

- 4 -
FIRST AMENDED PLEADING

anticompetitive practices were encouraged and aided by defendants within university administrations to violate academic integrity with indemnity. Administrators would also intimidate and coerce faculty including professors into giving students better treatment and grades which had the tendency to destroy competition. These illicit funds become comingled with administrators' and Trustees' personal finances as well as the university endowment comprised by over 4,700 individual accounts. Princeton University admissions primarily occur outside of the official, advertised process via delegated decisions made by donors and students admitted in this fashion tend to not need standardized test scores or other application requirements.
4. Plaintiff 1 was harmed due to defendants' anticompetitive practices, including through isolation, not being given access to class recordings all others were, or ability to perform online work or late work despite protected activity and others being able to, be absent for numerous weeks at a time as others routinely were, or be graded evenly or fairly.
5. Defendants' conduct was a substantial factor in causing Plaintiff 1 harm.

iv. Intentional Infliction of Emotional Distress;

"A cause of action for intentional infliction of emotional distress exists when there is '(1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct.' A defendant's conduct is 'outrageous' when it is so 'extreme as to exceed all bounds of that usually tolerated in a civilized community.' And the defendant's conduct must be 'intended to inflict injury or engaged in with the realization that injury will result.'" (Hughes v. Pair (2009) 46 Cal.4th 1035, 1050–1051 [95 Cal.Rptr.3d 636, 209 P.3d 963]).

Kathleen Chambers (Plaintiff 2), whom is Plaintiff 1's mother, as a direct and proximate result of Plaintiff 1 being harassed to no end and fraudulently diagnosed with schizophrenia and retaliatorily and corruptly placed in a psych ward among other intentional harms including the spreading of the knowingly false, self-invented claims given by defendants which resulted in Plaintiff 1 being committed, was emotionally distressed by defendants' conduct intentionally and with reckless disregard, to where Plaintiff 2 suffered injurious, severe medical harms resulting in emergency medical care being required. Defendants engaged in the intentionally harmful conduct with full knowledge of Plaintiff 2's medical state and likelihood of causing harm to Plaintiff 2, as well as full knowledge Plaintiff 2 relies on government assistance including EBT, other welfare programs and Medicaid, and that added financial hardship and difficulty would be caused by a worsening medical state for Plaintiff 2 and thus further emotional distress.

7. Pertinent facts to this civil action:

    i. Only two instances of a professor utilizing their official discretion to demarcate a student's class grade have occurred in the past several years at Georgetown Law, both instances were fall 2022 semester targeting me (Plaintiff 1) and resulted in denying me at least one CALI award. Spring semester 2023, rather than leave such a paper trail, my "anonymous" student exam code was given to all five of my professors before I took my final exams, and my professors were placed into a group by a Dean of the law school where they made fun of me, publicized their actions towards me to the student body, and coordinated in awarding me the minimum allowable GPA—denying me further CALI awards and intended to discriminatorily deny me academic opportunities. In total, at least 7 of 10 professors discriminatorily graded me down in my one academic year at Georgetown University.

    My character is irreparably assassinated. Malevolent narratives were baselessly created and spread against me including that I am "Hitler 2.0", a "serial killer", and accusations spread I lied about every single statement ever made about myself or accomplishments. As each malicious accusation and rumor against me were found to be meritless, more instantly took their place. Contact from Georgetown Law faculty resulted in me going from a finalist and favored for a full-tuition scholarship, stipend, and fellowship at Harvard University to not being offered any scholarship amount with my admission. I was set to join Yale University as one of only approximately fourteen Americans in a master's degree program, but defendants alumna of Yale contacted the degree program with baseless statements convincing to prevent the continuation of a business relationship. University policies were altered by Georgetown Law faculty, intentionally and discriminatorily denying me medical insurance coverage internationally while interning as a policy analyst for the Secretary General of a nation's NGO federation where I incurred a bacterial/parasitic digestive and ear infection. A guaranteed grant was temporarily denied. My internet technology equipment and their contents were obsessively and illegally recorded, monitored, and accessed by Georgetown Law faculty for multiple months. My admissions materials, health information, and social security number inter alia were shared publicly by faculty. Plaintiff 2 (my mother) was sexually emphasized and recurringly discussed in chats containing/by


faculty. Administrators retaliatorily got faculty and the student body to harass me and violate university policies in pursuit of my expulsion following internally reporting harms to a Dean. I am being persecuted based on protected classes I belong. I had to take a leave of absence for the last 3-5 weeks of the 2022-23 academic year due to privacy and security concerns following being publicly threatened within a university building, the first Georgetown Law student in history recommended or approved by faculty for such an in-semester absence. My leaving campus did not end the harmful conduct. I was followed and recorded by a fellow student in my neighborhood. Defendants would routinely show up at my girlfriend's place of work to stare and take photos of her, and with tortious intent defendants contacted supervisors my girlfriend had at a job in New York in 2023 with a nationally acclaimed news organization, resulting in her termination. In 2023, defendants affiliated with Georgetown Law sought out defendants affiliated with Princeton University to ensure the harm to me would not end, devising strategies towards expulsion, harassment, and other abuses of me.

Defendants affiliated with Princeton University, non-exhaustively:

Deleted student housing application (Summer 2023), Continually directed employees to evaluate me lower, monitor me, lie to me, and manipulate workplace environment to my detriment (July - December 2023), Singling me out with posting false information to official academic pages that differs from that visible for everybody else in degree program (August 2023), Providing others in program with answers to evaluations and assignments prior to them taking place to share with others except for me, Violate earlier invoked FERPA protections (August 2023), Breaking into and searching residence to then delete over half gigabyte of collected evidence (August 2023), Directing me to the university infirmary due to distress from above and related harms, where I then was involuntarily hospitalized due to actions of university employees (On or around August 11), Creation of ad hoc academic policies targeting me (On or around August 28, 2023), Retaliation for official reportings of harms to individuals' superiors (August - November 2023), Creation of more ad hoc academic policies targeting me (September 2023), Manipulating stipend amounts received intending prevention of me paying credit card monthly amounts owed to increase my stress (Months in and around October 2023), Ad hoc creation of rubrics and performance metrics to intentionally

detriment me (October 2023), Spreading knowingly fraudulent and highly damaging statements assassinating character to at least about 100 people (on or around October 25, 2023).

From at least July to December 2023, in-person and through numerous devices including within my residence defendant Associate Dean Karen McGuinness among others have monitored and observed me continuously without any legitimate purpose and based on multiple protected classes to which I belong. Additionally, my vehicle has been broken into and entered and allegedly stolen then returned altered, access to my residence permanently provided to fellow students resulting in stealing of personal belongings and information, audio equipment physically placed in areas I frequent including public restrooms, and a digital mechanism targeting my campus ID card for tracking movement and directing recording of me via campus technology equipment.

Within Princeton classrooms, Republicans are equated with bigotry. Princeton University's School of Public & International Affairs maintains myriad discriminatory admissions practices, many target Republicans or suspected conservatives among other groups for application rejection.

Academic policies were ad hoc created in an effort to prevent my ability to carry out a fellowship with a Republican U.S. Senator in Fall 2023. These included the university stating internships are banned during first-year fall semester (despite bringing in a professional to first-year graduate orientation to solicit for interns to the New Jersey state reparations project and similar postings and students accepting these and other positions), and that a number of core courses were required during MPA1 year despite many not enrolling in them. When these failed, direct efforts were made by university persons to have me fired. Only when these failed, during the second week of fall semester was another ad hoc academic policy created by administrators and selectively enforced against me. Consequently, I lost my fellowship in the U.S. Senate.

SPIA Associate Dean Karen McGuinness has continuously and criminally harassed me, including: (i) Creating a 'hit piece' against me, (ii) Spreading knowingly false verbal and written statements about me to the entire SPIA graduate program and Trustees of Princeton University, (iii) Coercing or otherwise convincing Dr. Hilary Herbold to commit fraud against me, including illegally diagnosing me with schizophrenia without basis and contrary to two outside psychiatrists who ruled out even depression, (iv) Subsequent alteration of records to hide that fact, (v) taking

multiple affirmative steps resulting in intentional denial of access to medical insurances I paid for, (vi) Ad hoc create numerous academic policies targeting me, even when in clear violation of Registrar or other policies, (vii) intentionally contacting with tortious intent preventing my gaining employment in the state of California governor's office, (viii) leading a never ending smear campaign against me, including attempts to convince Trustees of Princeton University I am a bad student despite setting the curve on both program midterms and every assignment turned in clearly displaying the most dedication according to program professors and being fully, inclusively respectful of all for the entirety of my time at Princeton University even as I was being violated uncivilly and sexually for months on end.

Graduate School Associate Dean Lily Secora has coerced me into interactions, illicitly threatened me, and conditioned my continued enrollment on unilateral terms which for various reasons lacks legal authority for or legitimacy.

Gender Equity Director Randy Hubert is at least vicariously responsible for manipulating multiple students in the ordering of harms to me, including an assault of me within Proctor Hall during sunday brunch, and in September 2023 the beginnings of initiating entirely self-invented allegations against me.

Visiting Professor and Princeton Press author Martha B. Coven has publicly harassed me in front of the entire MPA class I am part of, a direct cause of distress I went to the university infirmary for mere hours later.

I have been told by other students that I must be a masochist for attending Princeton as a conservative, that I am "asking for it" [punishment and harm] to come my way despite my never telling anybody or speaking about it.

On October 29, 2023, I began to draft an internal reporting of harms. The next day, Associate Dean Lily Secora told a parent of mine that I am a harm to the SPIA community on a phone call defendants brought about, lied to this parent repeatedly in advocating for the parent to call a mental health screener to my residence, and after this parent declined to an Associate Dean fraudulently called in a crisis reporting and corruptly had me removed from my campus residence and placed in a psych ward.

In further detail, on October 30 2023, while I was in my residence finishing drafting this official reporting of harms stating non-exhaustively that defendant(s) including Associate Dean Karen McGuinness engaged in racist conduct, Associate Dean Karen McGuinness acted upon the knowingly fraudulent diagnosis she coerced in fraudulently having me removed from my campus residence and committed to a psych ward by placing a personal phone call to a particular mental health screener they knew personally and making at least 4 knowingly false claims. These include: That I have schizophrenia, that I was seen on top of a building shouting, and that I made statements I planned to throw myself in traffic. This mental health screener, named Emmanuel G., arrived and to the audible surprise of the two police officers accompanying him told me that it is lawful for him to hold me for 48 hours for further evaluation and he is doing so. I was immediately transported at the accompaniment of the police officers to an ambulance that was waiting for me which brought me to Capital Health Regional's ER. There, the ER nurses (one named Eric) told me they did not know why I was there and that they had never seen anybody brought in for crisis evaluation as calm and together as I was. Then, their tune shifted following seeing paperwork declaring I have schizophrenia and am off of medication and was designated for hospitalization prior to being evaluated by the crisis unit or psychiatrist. I was committed in Northbrook mental hospital for what amounted to a week. Associate Dean Karen McGuinness inundated the screener, ER, crisis unit, and Northbrook mental hospital that was holding me with baseless and knowingly false and bias-motivated statements, knowingly fraudulent documents and records violating my HIPAA and FERPA protections, and other harassment as to why I needed to be committed to a psych ward and held there ideally indefinitely.

In addition to above and other crimes and offenses by defendants, I receive intentionally unequal and unfair treatment. This includes excusing other students to miss over a month of class while still completing coursework away from campus and without counted absences or penalty, as well as providing class lecture recordings which administrators and professors to me deny the existence of and I am not provided access to. Many other instances of unequal and harmful treatment has been reported by me to university officials and Trustees including sexual abuse. I experience repeated attempts at intimidation, and would throw up around campus as a result.

Even following multiple reportings to mandatory reporters that I was being sexually abused by university officials, no investigations occurred. Even following my filing of an official complaint with the designated office, no investigation occurred. My request to be guaranteed physical safety on campus in November 2023 was denied. My request for completing coursework away from campus in November 2023 was denied. All requests of support by me were denied (August 2023 to April 2024). Not a single action was taken by Princeton University to resolve the bias-based abuse, hostility, and intimidation I faced by the campus environment continuously. In December 2023, my request to meet with Princeton university officials including Dean Priestley, Dean Amaney, and the Office of the President to discuss increased bias-based harms to me went ignored. In response to heightening antisemitism across campuses, in December 2023 President Eisgruber's only response was to protect antisemitism in stating "we can and will respond vigorously to speech that violates our values." None of the antisemitism or other discriminatory hate crimes I endured then violated Princeton University's values, wholly contrary to public policy.

In classrooms lecturers would be directed to sabotage me, tailor their curriculum to my weaknesses in hopes I believe I am just over my head, write and post incorrect answers but provide everyone but me the correct information, alter deadlines, and more. One course's final exam made the majority of its content material not covered within the course but provided to everyone except me notification of the material in hopes I fail. I did not, but was still graded down anyway. Princeton also allows, actively encourages, and participates in Academic Integrity violations such as plagiarism to occur en masse in their degree programs.

Keystrokes, screens, and phone conversations with my girlfriend are continuously recorded then obsessively tracked and analyzed for the purpose of building hatred towards me among the student body. Every such instance has been over traditional Republican views, including my researching NYPD's budget decrease after my girlfriend told me of her daily struggles with men in public disrespecting her physically and verbally, and bear mace being sold-out in stores due to this.

The same equipment used throughout Princeton University as security cameras and to record lectures has been installed in my bedroom, recording and widely sharing with faculty and students me in the nude among other private activity. This sexual abuse adds to the previously reported

instances where accessing my cell phone was/is utilized by Princeton officials to observe me, also in the nude. I am tremendously effected and uncomfortable with this nonconsensual arrangement. Any attempt by me to end such abusive observation of me including in the nude brings retaliation from Princeton officials, including via directing harassment of me. When I took this device to the off-campus township police station to file a police report or temporary restraining order, Princeton's campus employees called ahead instructing the station to not take my report and I was in fact denied access to reporting on both attempts (on/around October 9, 2023 at approximately 1pm, and again on/around November 29, 2023 at approximately 6pm).

Dangerously obsessed Princeton University officials commonly direct students to act criminally towards me. A student maintaining a close relationship with the Gender Equity & Title IX Office was implicated in the assault I suffered on campus on/around August 27, 2023. Then, following an official campus event on/around September 17, 2023, the Gender Equity & Title IX Administration office convinced a student personally close with the office to dishonestly invent allegations against me for the purpose of creating a reason to bring official action against me. Only when the student later became uncomfortable doing so did the office reverse course.

'Facilities' vehicles were deployed to track me for months. In a single walk from my residence to a dining hall I would pass as many as 15 'Facilities' vehicles including ones parked in dead-ends or behind hedges waiting for and tracking me before scurrying away. Illicit entering and searching of my residence is a common occurrence, but Friday September 22 between 7:00 and 7:40pm my room was entered and altered in 40 minutes I was away. A specific police officer was assigned to discretely follow me around campus by large van meant for SWAT and by foot.

Princeton University officials' attempts to claim I am delusioned, experiencing psychosis, or schizophrenic are defamatorily being lodged for the sole purpose of covering their illegal conduct, and are contrary to outside clinical opinion and not reasonably believable. Each course professor I have had at Georgetown University and Princeton University acknowledged to being impressed and seeing very obvious potential to attain high political aims. I had a perfect attendance record and had never been medicated or hospitalized prior. I hold government security clearance level of Secret. I have the highest recommendation from every position held including with the U.S. Senate, U.S.

1  Department of Justice, and a nation's NGO federation. I am an award-winning student at every
2  university attended, and continued to maintain maximum allowable credit-loads every semester for
3  a third successive year as I attain a concurrent J.D./M.P.A with Georgetown Law and Princeton
4  University.
5      My reportings as well as requests for support receive no response from Princeton
6  University's Trustees, President Eisgruber, Graduate School Dean Priestley, or SPIA Dean Amaney.
7  Universities nationally are engaging in civil rights abuses and discrimination systemically and
8  intentionally, and in 2019 while attending California Polytechnic State University, San Luis Obispo,
9  Plaintiff 1 first fell victim to this when one of the two student groups which Plaintiff 1 concurrently
10 served as an executive officer was placed onto probation by defendants under entirely invented facts
11 not discovered to be fraudulent by Plaintiff 1 until the second half of 2022 when discovering
12 defendants' tactics to be commonplace nationally as a primary strategy of university disciplinary
13 offices and have been since at least 2017. As this student group remained on probation and
14 defendants remained on their discriminatory, fraudulent purgeful democide of student groups, two
15 defendants then-students leveraged this fragile position by fraudulently and defamatorily creating
16 facts defendants knew to be untrue and contradictory to their own previous statements for bias-
17 motivated purposes and directly inspired and instructed by the work of Diversity, Equity, &
18 Inclusion as well as Critical Race Theorists' messaging and their disciples including groups
19 defendants identified with and are party to which are outspokenly purposed for discriminatory
20 political cleansing of universities.
21     Defendants then-students did so knowing it would be impossible for Plaintiff 1 to mount any
22 defense without Plaintiff 1's student group being dissolved by defendants in the university. Years
23 later, including in November 2021 and throughout 2023 including on or around October 25, 2023,
24 defendants repeatedly, in an organized fashion, and motivated by bias based on protected classes
25 spread knowingly false and materially misrepresented details intending harm to Plaintiff 1 related to
26 the earlier story. Existence of these written and other statements by defendants in 2021 and 2023
27 were intentionally concealed from Plaintiff 1, by defendants' design unable to be accessed by
28 Plaintiff 1 with due diligence.

FIRST AMENDED PLEADING

ii. Pertinent contextual facts, chronologically:

In or around 2017, universities nationwide began weaponizing university processes for entirely bias-based motivations, learning tactics for doing so from sources including Critical Race Theory books and extremist internet cells, including being encouraged to invent facts themselves then used to create opportunity to act officially against university persons or groups as discretion became an unlimited source of authority and neutrality discarded as a political artifice. At Cal Poly and elsewhere including Georgetown, this took the form of disciplinary and other offices cooperating with a faction of students to target faculty, students, and student groups, which since on or around 2017 have systematically been disciplined and dissolved under pretext or without having violated any law or university policy. At Princeton, many students and faculty have been terminated or coerced into dropping out as a result of this since 2017. This political and power-based violence has proven partisan, sexist, and antisemitic among other bias motivations, creating a hotbed of hate across U.S. universities often originating with and sustained by university administrations.

In youth, Plaintiff 1 at times lived in trailer parks.

In 2020, Plaintiff 1's work on the Democrat mayoral campaign of an accomplished businesswoman in a major American city was studied for erasing an over 20-point polling deficit after primaries.

In 2021, Plaintiff 1 ended a year of youth homeless counseling and entered law school on a merit scholarship at Arizona State University. There, Plaintiff 1 was selected by a panel of faculty and students for an IP Law academic paper and fellowship served as 1L Rep to the Federalist Society chapter that won national chapter of the year, received Best 1L Oral Argument with a 100/100, and received personal recommendations from multiple Arizona State University law professors.

In 2022, Plaintiff 1 transferred to Georgetown Law. Immediately upon arrival, students there began attempting to convince Dean of Students Mitchell C. Bailin to expel Plaintiff 1, citing reasons such as "It makes me so uncomfortable he was running around with rifles in Quantico" while Active Duty as part of a U.S. Marine Corps officer program with a 1.5% acceptance rate. Despite being declared by faculty the best performing student to come through the school in years, was

honored as the best legal extern the U.S. Department of Justice office I was with had seen, and being accepted to every Ivy League university applied to for a concurrent degree.

In 2023, Plaintiff 1 arrived to Princeton on full-scholarship and stipend at 26 years old after being a policy analyst for a nation's NGO federation and securing a fellowship in the U.S. Senate. On October 10th and 15th of 2023, the same week as the most purely antisemitic violence since 1945, Plaintiff 1 reported to President Eisgruber and other university officials "remaining on campus at the time to not be an available option", "forced… to leave campus" due to "the severity and frequency of harms", "discriminatory hatred", "knowing weaponization", "cultural insensitivity", "hostile environment", "Princeton University's complete lack of response to what is clear criminal conduct by administrators harming a student." For weeks during November 2023, Plaintiff 1 performed services from Placer county as part of employment with Princeton University.

At least from fall 2023 to January 2024, Plaintiff 2's distress directly resulted in numerous instances of emergency medical care and ER visits.

In late January 2024, a Division within a state Attorney General's office launched an investigation and referred a second investigation to a prosecutor's office for Princeton University officials conduct, and Plaintiff 1 was away from campus for personal safety. On March 21, 2024, the very next day after the initial filing of a Pleading in this civil action on March 20, 2024, Plaintiff 1 was informed that enrollment, degree candidacy, and employment with Princeton University was being terminated without any prior process occurring.

8. Plaintiffs here place demand for jury trial on all issues.

DATED: May 16, 2024

_KATHLEEN CHAMBERS_

_JOEL BRENDON JACOBS_

FIRST AMENDED PLEADING